UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,  :
            Plaintiff,               :
                                     :
      v.                             :
                                     :    3:04 CV 1342 (EBB)
WILLIAM A. DIBELLA AND NORTH COVE    :
VENTURES, LLC.,                      :
            Defendants.              :
------------------------------------X
```

## **RULING ON MOTIONS REGARDING ADVERSE INFERENCE INSTRUCTION BASED ASSERTION OF FIFTH AMENDMENT PRIVILEGE**

Plaintiff, Securities and Exchange Commission ("Plaintiff" or "SEC"), submitted its motion *in limine* for an adverse inference instruction to the jury (hereinafter "Pl.'s Mot. *in Limine*") based on Defendant DiBella's ("Defendant" or "DiBella") invocation of the Fifth Amendment privilege against self-incrimination in July and August 2000. Defendants DiBella and North Cove Ventures, LLC. (collectively "Defendants"), responded by filing a motion *in limine* to preclude evidence of Defendant DiBella's invocation of his Fifth Amendment privilege (hereinafter "Defs.' Mot. *in Limine*"), as well as in the alternative, if Plaintiff's motion is granted, request Defendant DiBella and his attorney, Hugh Keefe, be allowed to testify to the reasons for Defendant DiBella's invocation. For the following reasons, Plaintiff's motion *in limine* is GRANTED, and Defendant's motion *in limine* is DENIED on the issue of precluding evidence of Defendants privilege invocation, and DENIED on the

issue of Attorney Keefe's testimony unless he withdraws from the case and Defendants waive their attorney-client privilege.

### Background

The following facts consist of those deemed necessary to an understanding of the issues raised in, and decision rendered on, these motions. The facts are culled from the Complaint, the relevant memoranda of law, and the exhibits attached thereto.

In 1999 and 2000, the United State's Attorney's Office was investigating matters relating to the Connecticut Retirement and Trust Funds and former Connecticut State Treasurer Paul Silvester ("Silvester"). The SEC also began an investigation of the same matters, and sought to take Defendant DiBella's testimony. On June 29, 2000, DiBella's attorney invoked DiBella's Fifth Amendment privilege against self-incrimination. In response, the SEC initiated a subpoena enforcement action against Defendant on July 3, 2000, seeking to compel his personal testimony and/or personal assertion of his Fifth Amendment privilege. In support of its application, the SEC explained it would be entitled to seek an adverse inference if Defendant asserted the privilege. SEC's Application for an Order to Show Cause and an Order Enforcing Administrative Subpoena, pp. 2, 12, Ex. E to Pl.'s Mot. *in Limine* (hereinafter "SEC's Application for Order"). The Massachusetts District Court granted Plaintiff's application and ordered DiBella's compliance with the subpoena for testimony on

July 7, 2000.  Pursuant to the order, the SEC questioned Defendant DiBella again on August 3, 2000.  Defendant refused to answer questions or specify the privilege he was invoking.  On August 15, 2000, Defendant submitted to further questioning, where he refused to answer the SEC's questions concerning anything other than "basic pedigree and preliminary identification questions", and directly invoked his Fifth Amendment privilege himself.  Def.'s Mem. in Support of Def.'s Mot. *in Limine* to Preclude Evidence of Invocation of Fifth Amendment Privilege and Adverse Inference Jury Instruction, pp. 3-4 (hereinafter "Def.'s Mot. *in Limine*").  Around this time, the SEC provided Defendants with its Form 1662, which explains that there is a likelihood any information supplied to it will be made available to other government agencies.

On August 12, 2004, the SEC initiated the present action against Defendants, alleging Defendants knowingly assisted others in executing a secret scheme involving Silvester, who arranged for Defendants to receive substantial fees from Thayer Capital Partners ("Thayer") without performing meaningful work in exchange for political favor and future goodwill.  The SEC made available to Defendants all non-privileged documents in its possession on December 6, 2005 relating to this matter and other matters involving Silvester, which included approximately 33,000 pages, or 13.5 boxes, according to Defendants' calculations.

Defs.' Mot. *in Limine* pp. 5, 6 n.4 ("[a]ssuming 2,500 pages per the standard litigation/copying box").  On November 15, 2006, which was after the possibility of criminal charges lifted, Defendant DiBella waived his Fifth Amendment privilege and submitted to a deposition.  However, Defendant admitted his recollection of events in question was compromised due to the long passage of time. *See e.g.* DiBella Dep. 50:21-24, 51:22, 53:12, 57:23, 59:2, 65:18, 77:10, 84:25-85:2, 93-21, 113:6, Nov. 15, 2006.  During this deposition, DiBella was questioned about the reasons for his invocation of the Fifth Amendment privilege during prior SEC interviews.  Defendant's attorney instructed him not to answer, stating it "g[ot] into the attorney-client privilege."  Id. at 163:5-8.  Plaintiff again explained it would "seek an adverse inference [sic]" instruction.  Id. at 163:18-19.

On January 10, 2006, this Court denied Defendants' motion for partial summary judgement and motion to strike and upheld the sufficiency of the SEC's claims.  Plaintiff filed its motion *in limine* seeking an adverse inference jury instruction on March 6, 2007.  Defendants responded on March 26, 2007 by filing their motion *in limine* seeking preclusion of any evidence or jury instruction relating to Defendant DiBella's assertion of his Fifth Amendment Privilege.  The jury trial in this case is scheduled to commence on May 8, 2007.

4

## Discussion

### I. Adverse Inference Instruction

The Fifth Amendment ensures a witness a right to "remain silent unless he chooses to speak in the unfettered exercise of his own will . . . ." Spevack v. Klein, 385 U.S. 511, 514-15 (1967).  It applies to all forms of official questions, including those that are "civil or criminal, formal or informal," where the answers might incriminate the witness in future criminal proceedings.  Baxter v. Palmigiano, 425 U.S. 308, 316 (1976), citing Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).  While the Fifth Amendment prohibits adverse inferences where parties refuse to testify in response to probative evidence against them in criminal cases, there is no such prohibition in civil actions. Baxter, 425 U.S. at 318.  In a civil matter, a witness's invocation of his or her Fifth Amendment privilege is "admissible and competent evidence", as long as the "probative value of the evidence [is] not 'substantially outweighed by the danger of unfair prejudice' under Fed. R. Evid. 403." Brink's Inc. v. City of New York, 717 F.2d 700, 710 (2d Cir. 1983); see also Penfield v. Venuti, 589 F. Supp. 250, 255 (D. Conn. 1984).  This is because "silence in the face of accusation is a relevant fact . . . . [and] is often evidence of the most persuasive character." Baxter, 425 U.S. at 319.

The trial court has broad discretion in determining whether an adverse inference is appropriate. Brink's, 717 F.2d at 710. Due consideration should be given to "the nature of the proceeding, how and when the privilege was invoked, and the potential harm for prejudice to opposing parties." United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave., Brooklyn, NY, 55 F.3d 78, 84 (2d Cir. 1995). As the assertion of the Fifth Amendment is an effective way to hinder discovery, courts "must be especially alert to the danger that the litigant might have invoked the privilege primarily to . . . gain an unfair strategic advantage over opposing parties." Id. at 84.

In the present case, Plaintiff asserts it was unduly prejudiced by Defendant's assertion of the Fifth Amendment privilege because it both prevented and postponed necessary fact-finding, and that the postponement affected Defendant's memory, as well as provided him the opportunity to use Plaintiff's discovery in the case as a roadmap to fashion his later testimony. Defendant DiBella, either personally or through counsel, invoked the privilege during his three SEC investigative interviews. As a SEC investigative interview is not a criminal proceeding, see SEC v. O'Brien, Inc., 467 U.S. 735, 742 (1984), an adverse inference is admissible evidence as long as it is not substantially outweighed by the danger of unfair prejudice. Brink's, 717 F.2d at 710; see also Penfield, 589 F. Supp. at 256-

57 (allowing jury to draw adverse inference against defendant after he invoked the privilege at first deposition but later testified at subsequent deposition); SEC v. Cassano, No. 99 CIV. 3822, 2000 WL 1512617, at *2 (S.D.N.Y. Oct. 11, 2000) (finding adverse inference warranted where defendants asserted privilege during investigative testimony but later waived privilege); SEC v. Herman, No. 00Civ.5575, 2004 WL 964104, at *7 (S.D.N.Y. May 5, 2004)(negative inference drawn where defendants invoked privilege during investigative testimony but later testified during deposition). Evidence is not unfair or excluded for Rule 403 balancing purposes if it is merely damning. Brink's, 717 F.2d at 710; United States v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972); see also Penfield, 589 F. Supp. at 256-57.

Defendants were repeatedly informed that Plaintiff would seek an adverse inference if Defendant DiBella asserted the Fifth Amendment privilege, SEC's Application for Order, pp. 2, 12; DiBella Dep. 163:18-19, which has been held to be a factor in the admissibility of a defendant's invocation of the privilege. SEC v. Softpoint, Inc., 958 F. Supp. 846, 856 (S.D.N.Y 1997) (court noting that defendant's ample warning that his repeated refusals to waive Fifth Amendment privilege was a factor in precluding defendant from introducing evidence on summary judgment motion that he previously withheld during deposition), aff'd SEC v. Softpoint, 159 F.3d 1348, 1998 WL 537522 (2d Cir. 1998). In

addition, Defendants were represented by experienced counsel during DiBella's SEC interviews and deposition, who presumably was aware of the possible repercussions of the invocation of the privilege during civil matters.  As Plaintiff asserts much of its case concerns testimony of conversations between Defendant DiBella and others that is not memorialized by documents, Defendant's invocation of the Fifth Amendment privilege in response to Plaintiff's questions severely hampered Plaintiff's ability to conduct meaningful discovery and proceed with its case.  The Second Circuit has held that defendants' claims of the Fifth Amendment privilege were admissible in a jury trial because their probative value outweighed any prejudice due to the importance of the testimony on a key issue in the case.  Brinks, 717 F.2d at 710.  Here, Defendant refused to discuss his involvement in arranging the investment of the Connecticut State Pension Fund for Thayer, promises he made to Silvester in return for his consultant position, discussions he had with Silvester concerning his fees, what services he performed for the investment, the details of his fee arrangement, Silvester's role in the arrangement, and whether he requested Silvester increase the investment in order to increase his fees, all of which have obvious probative value to the present matter, and indeed lie at the heart of the case.  Trans. of DiBella's Investigative Test.,

9:17-29:29, Aug. 15, 2000, Ex. A to Pl.'s Opp'n to Defs.' Mot. *in Limine*.

Furthermore, despite Defendants' assertion that the SEC had other resources from which to glean information, that does not relieve Defendants of their duty to provide meaningful discovery. As the Second Circuit explains, a "party who asserts the privilege must bear the consequences of lack of evidence." Certain Real Prop., 55 F.3d at 83, citing United States v. Taylor, 975 F.2d 402, 404 (7th Cir. 1992). Plaintiff's short lists of trial exhibits and witnesses demonstrates the importance of Defendant's testimony in this case. Although Defendant DiBella ultimately waived the privilege and was deposed by Plaintiff, he often replied he could not recall details or events vital to the present matter due to the length of time that had passed. *See e.g.* DiBella Dep. 58:11-12, 59:2, 65:18, 77:10, 84:25-85:2, 93:21, 113:1-22. In addition, while Defendant responded to Plaintiff's interrogatories, in his response he repeatedly states he cannot recall specific dates, refers to his deposition, and asserts he relies on his memory of certain events, Def. DiBella's Answers to Plaintiff's Interrogs., Ex. 2 of Defs.' Mot. *in Limine*, which he has admitted in his deposition is not clear. *See e.g.* DiBella Dep. 50:21-24, 57:23, 65:18, 77:10, 84:25-85:2, 93-21, 113:6. These unclear responses do not provide meaningful or substantive evidence concerning the key

9

issues in the case, and as such, Defendants, not Plaintiff, must bear the consequence of Defendant's invocation and resulting lack of evidence.

Another factor weighing against Defendants is the timing of Defendant DiBella's waiver. Defendant DiBella was interviewed three times in 2000 by Plaintiff before the present suit was commenced in 2004. All three times, either Defendant or his counsel invoked his privilege and right to remain silent. Defendant did not waive this privilege until November 2006, almost a year after Plaintiff began producing documents to Defendants, and less than six months before the trial in this matter is scheduled to commence.[1] This delay afforded Defendants a strategic advantage, which weighs against them. Certain Real Prop., 55 F.3d at 86; Softpoint, 958 F. Supp. at 857; Prater, 289 F. Supp. 2d at 50.

Allowing the jury to hear evidence of Defendant's invocation of the Fifth amendment privilege prevents the privilege from being used as a weapon, which furthers the policy behind the inference. Penfield, 589 F. Supp. at 255. Furthermore, the harshness of an adverse inference is mitigated by the ability of Defendant "to show by other evidence that his response would not have incriminated him." Id. Finally, it is important to note

---

[1] Although the Court does not know when Defendant DiBella learned he was no longer a target of a criminal investigation or potential criminal charges, the last indictment in related matters was returned in October 2000.

that Defendants' failure to cite any cases where an adverse inference instruction was requested but declined is another probative factor in the Court's ruling.

**II.  Defendant and his Attorney's Testimony Regarding Reasons for Invoking the Fifth Amendment Privilege**

Defendants request that if an adverse inference is allowed, Defendant DiBella be permitted to testify to explain the answers Defendant would have provided during his three investigative interviews, as well as his attorney Hugh Keefe be permitted to testify to the reasons for Defendant's invocation of the Fifth Amendment privilege.  With respect to Defendant's explanation of the answers he would have provided in the SEC interviews, this Court has already determined he can provide evidence and testify to demonstrate his answers would not have incriminated him. Supra, at 10-11.  However, Defendant's conversations with counsel are decidedly different.  During Defendant's deposition, when asked about his reasons for invoking the Fifth Amendment privilege, Defendant's counsel stated that the answers to Plaintiff's questions concerned "the attorney-client privilege" and instructed Defendant not to answer.  DiBella Dep. 162:12-163:23.  Defendant followed the advice of counsel and did not respond to Plaintiff's questions. Id.  As Defendant has not waived his attorney-client privilege, he is not permitted to testify about the reasons for his invocation of the Fifth Amendment during the SEC interviews.  See Apperla Corp. v. MJ

11

Research Inc., 303 F. Supp. 2d 141, 142-43 (D. Conn. 2004)(defendants' attorney precluded from testifying in case about reasons for attorney's advice to defendants' in patent matter because they had not waived attorney-client privilege).

In addition, Defendants' attorney is also not permitted to testify concerning Defendant DiBella's privilege invocation. Local Rule 83.13 prohibits an attorney from being called as a witness on behalf of his client unless he withdraws from representing that client first.  D. Conn. L. Civ. R. 83.13(b). There are three exceptions specified in the Local Rules that permit a lawyer to testify for his or her current client: (1) if the attorney will solely discuss an uncontested matter, (2) if the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony, and (3) if the testimony will relate soley to the nature and value of the legal services rendered in the case by the attorney.  Id. at 83.13(a).

Attorney Keefe has not withdrawn from the case.  Therefore, in order for him to testify, his potential testimony must fit within one of the three exceptions listed in the local rule.  It does not.  See In re Raytech Corp. v. Ryan, 319 B.R. 345, 348-49 (D. Conn. 2005) (discussing that generally under Local Rule 83.13 attorneys and their firms are precluded from providing trial testimony); cf. Ulster Scientific, Inc. v. Guest Elchrom

Scientific AG, 181 F. Supp. 2d 95, 105 (N.D.N.Y. 2001) (disqualifying attorney from representing defendant under similar New York rule because attorney negotiated contract at issue and would likely be called as trial witness).  In addition, as stated above, Defendants have not waived their attorney-client privilege.  Apperla, 303 F. Supp. 2d at 143 (defendant's attorney precluded from testifying where party had not waived attorney-client privilege).  Therefore, Defendants' attorney may not testify at Defendants' trial.  However, testimony from Attorney Keefe would help mitigate the prejudice a jury may impart on Defendants for DiBella's invocation of the Fifth Amendment privilege.  Therefore, if Defendants waive their attorney-client privilege with Attorney Keefe and Attorney Keefe withdraws from the case, he may then testify as to the reasons for Defendant's invocation of the Fifth Amendment privilege.

## Conclusion

For the foregoing reasons, Plaintiff's motion *in limine* is GRANTED (Doc. No. 60) and Defendants' motion *in limine* (Doc. No. 65) is DENIED on the issue of the preclusion of evidence of Defendant's invocation of the Fifth Amendment privilege, and DENIED on the issue of Attorney Keefe's testimony unless he withdraws from the case and Defendant waives his attorney-client privilege.  Plaintiff's counsel will be permitted to read to the jury the questions which Defendant DiBella refused to answer

during his investigative interviews in 2000. The Court will then instruct the jury that it may, but need not, draw an adverse inference against Defendant based on his refusal to answer, if such an inference is warranted by the facts of the case.

                              SO ORDERED

                              _____
                              ELLEN BREE BURNS
                              SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this ___ day of May, 2007.